Colorado Commission on Higher Education 1000 State Social Services Building Denver, Colorado 80203
Board of Trustees Colorado School of Mines Administration Building Golden, Colorado 80401
Board of Trustees University of Northern Colorado Administration Building Greeley, Colorado 80631
State Board of Agriculture Colorado State University Administration Building Fort Collins, Colorado 80523
Trustees of the State Colleges in Colorado 221 State Services Building Denver, Colorado 80203
Board of Directors Auraria Higher Education Center 1068 9th Street Denver, Colorado 80204
Dear Board Members:
QUESTION PRESENTED AND CONCLUSION
Do non-voting student and faculty members of the governing boards have all the rights of other members?
 My conclusion is "yes", except as specifically provided to the contrary by statute.
ANALYSIS
House Bill 1232 enacted by the 1975 session of the Colorado General Assembly enlarged the governing boards of all state institutions of higher education except the Board of Regents of the University of Colorado and the State Board for Community Colleges and Occupational Education, making or modifying provisions for student (and in the case of the State Board of Agriculture, faculty) membership thereon. Two of the affected governing boards (the Board of Trustees of the Colorado School of Mines, and the Board of Trustees for the University of Northern Colorado) have formally requested the opinion of this office as to the status and role of these additional board members. This memorandum, prepared in response to those requests, addresses the status and role of the added members on all of the affected governing boards, including the State Board of Agriculture, the Trustees of the State Colleges in Colorado, and the Board of Directors of the Auraria Higher Education Center, because all are affected by the same act and its interpretation requires that the act be examined as a whole.
As to three of the governing boards (the Trustees of the State Colleges in Colorado, the State Board for Community Colleges and Occupational Education, and the Board of Directors of the Auraria Higher Education Center), H.B. 1232 creates, apart from the governing board itself, a separate "advisory committee" composed of students. With respect to two of the boards for which such a separate advisory committee is created (the Trustees of the State Colleges in Colorado, and the State Board for Community Colleges and Occupational Education), H.B. 1232 authorized a supplemental appropriation to the Commission on Higher Education for the implementation of the act, presumably to cover the projected expenses of the advisory committees whose members, from separate institutions in scattered parts of the state, would have to travel in order to meet and confer. This memorandum is not concerned with the role or status of members of these separate advisory committees.
Under the provisions of H.B. 1232, each of the affected governing boards (which otherwise are composed of members appointed by the governor or, in the case of some members of the Auraria board, by the governing boards of constituent institutions) is enlarged by the addition of one or more "elected members," elected by student or faculty constituencies. The Board of Directors of the Auraria Higher Education Center is enlarged by the addition of one member, to be a student elected by and from the student advisory committee created by the act. The Trustees of the State Colleges in Colorado is enlarged by the addition of one member, to be a student elected by and from the student advisory committee created by the act. The Board of Trustees of the Colorado School of Mines is enlarged by the addition of one member, to be a student elected by and from the student body of the School of Mines. The Board of Trustees for the University of Northern Colorado is enlarged by the addition of one member, to be a student elected by and from the student body of the University of Northern Colorado. The State Board of Agriculture, which previously had one faculty and one student member, is enlarged by the addition of one more faculty and one more student member, so that its membership now includes: one elected officer of the faculty council of Colorado State University; one elected officer of the faculty council of Fort Lewis College; one elected officer of the student body of Colorado State University; and one elected officer of the student body of Fort Lewis College.
It is the status and role of these "elected members" of the respective governing boards themselves that is the subject of this memorandum. In the paragraphs that follow, all citations to the provisions of H.B. 1232 and to the provisions of law thereby affected will be by reference to the respective sections of Colorado Revised Statutes 1973, as amended.
The statutes are explicit with regard to the role and status of the elected members in two respects: they are explicitly designated as "members" of the respective governing boards; and they are explicitly described as "without the right to vote." Sections 23-30-101, 23-40-104, 23-41-102, 23-50-101 and 102,23-70-102. This, however, leaves inexplicit a great deal about the role and status of the elected members, and that is the reason for this memorandum.
Each of the elected members is described, by each of the statutes cited in the foregoing paragraph, as "advisory, without the right to vote." The major question is whether the word "advisory" and the phrase "without the right to vote" are to be taken as appositive, the latter explaining the meaning of the former; or whether the word "advisory" is to be given some independent force so as to imply some other limitations on the status and role of these elected members in addition to denial of the right to vote.
Normal principles of statutory construction compel the conclusion that the word and the phrase must be read as appositive. One reason for this conclusion is that otherwise the phrase "without the right to vote" would be redundant and would have no function in the act. For whether or not "advisory" were intended to imply any additional restrictions, the least it could reasonably mean is the absence of a right to vote; and consequently, with the negation of voting inherent in the concept of "advisory," it would be redundant and superfluous to provide specifically, "without the right to vote." On the other hand, if the intent of the legislature were to give a narrow meaning to the word "advisory" (which otherwise could be taken to imply other restrictions as well) the most appropriate way for the legislature to indicate that intent would have been to do what it apparently did, using the phrase "without the right to vote" as appositive to the word "advisory," to explain what was meant by that word. Since it is a traditional rule in statutory construction that one is to presume that the legislature has not wasted words or included superfluous or redundant words in a statute, but is to accept that construction according to which each of the words has meaning and function, Johnston v. CityCouncil of the City of Greenwood Village, 177 Colo. 223,493 P.2d 651, 654 (1972); Blue River Defense Committee v. Townof Silverthorne, 33 Colo. App. 10, 14, 516 P.2d 452
(1973), cert. denied, Dec. 17, 1973, it follows that the view that the word and the phrase in question are appositive is to be preferred.
Incidentally, the view here adopted does not result in the word "advisory" becoming redundant or superfluous, for that word is used elsewhere in the provisions of H.B. 1234 as a term of art. For example, 23-30-101 contains reference to "the four advisory members," and to "these advisory offices." If the single adjective "advisory" could not be used, the more cumbersome appositive prepositional phrase would have to have been used in such places. The use of the appositive made possible a slight simplification of the statutory language in such places, serving the same function that is sometimes served by the use of specialized definitions adopted for the purpose of a particular statute. In effect, the language, "advisory, without the right to vote," provided a specialized definition of the word "advisory," so that the single word could be used elsewhere in reference to the elected members of the governing boards with a clear understanding of what that word meant.
A second reason for adopting the view that the word "advisory" and the phrase "without the right to vote" are appositive, and thus construing "advisory" to imply no restrictions beyond the lack of voting rights, is the application of other traditional intrinsic aids in statutory construction. In particular, it is to be noted that in several instances, such as when making reference to filling vacancies on the respective boards, separate provision is made for the appointed members on the one hand and the elected members on the other. Yet in other instances, no distinction is made, so that the provisions in question would appear to apply as fully to elected members as to those who are appointed. For example, without distinguishing between the elected and the appointed members, 23-40-104 provides that the members of the Board of Trustees for the University of Northern Colorado "may make bylaws and regulations" and "may conduct the business of said university." Similarly, without making any distinction, 23-30-103 provides that the members of the State Board of Agriculture "may be allowed actual travelling expenses." Since in certain instances the General Assembly did take pains to distinguish between the elected and advisory members, traditional principles of statutory construction would compel the conclusion that where no distinction was expressly made, no distinction was intended. Since no distinction is made in those provisions giving the respective boards power to make bylaws and regulations and to govern the institutions, it must follow that the General Assembly contemplated that the elected members would participate as fully as any other member in these activities, the only exception or restriction being that the elected members are explicitly denied the right to vote.
In sum, it appears that the elected members of the several governing boards affected by H.B. 1232 are members of those respective boards as much as any appointed member, fully and equally entitled to the full range of rights and perquisites of membership, except as specifically provided to the contrary by the language of the statutes. They are, of course, specifically denied the right to vote; but there is no denial of equal rights to make or second any motion, to participate fully and equally in any discussion and debate, to attend and participate in any closed or executive session, to make equal use of staff resources provided for their respective boards, or to enjoy any of the other rights and perquisites of membership. Where members are required to subscribe to an oath of office, the requirement applies equally to the elected members. Where members are entitled to a per diem allowance or to reimbursement of expenses, the elected members are equally so entitled. The elected members are eligible equally with the appointed members for any office filled by the respective governing boards from among their own members. The elected members are responsible for and may be liable for, the acts and omissions of their respective governing boards as fully as, and under the same rules and limitations and exceptions as, any of the appointed members. In every respect the elected and the appointed members must be treated as of equal status and with equal roles, except as specifically provided to the contrary by statute. No distinction, other than the distinctions explicitly drawn by statute, can be drawn between them.
One important implication of this pertains to the requirement of a quorum prerequisite to the doing of business. With respect to the Board of Trustees of the Colorado School of Mines,23-41-102(2) provides specifically that any four of theappointed members constitutes a quorum, and therefore, as to that governing board, the elected member is not to be taken into account for purposes of the quorum requirement. In contrast, with respect to the State Board of Agriculture23-30-103 provides that "A majority shall be a quorum for the transaction of business," without making any distinction between appointed and elected members. Consequently, the Board of Agriculture cannot transact business unless a majority of its full membership of twelve persons (eight appointed and four elected) is present. As to the Board of Trustees for the University of Northern Colorado, the Trustees of the State Colleges in Colorado, and the Board of Directors of the Auraria Higher Education Center, there is no special statutory provision fixing a quorum, but section 2-4-111 provides that "A quorum of a public body is a majority of the number of members fixed by statute." No distinction may be drawn for quorum purposes between the appointed members and the elected members of these boards.
Another important implication of H.B. 1232 pertains to the majorities that may be required to take action even when a quorum is present. The margin of majority needed is not prescribed by statute as to any of the affected governing boards, but H.B. 1232 has an impact upon such applicable provisions as may be contained in the respective boards' own bylaws. Since the elected members are members equally with the appointed members, the elected member or members would have to be counted for purposes of any bylaw provision requiring a majority (or extraordinary majority) of the members of the board, or of the "members present" when a vote is taken. On the other hand, the elected members would not have to be counted for purposes of any bylaw provision requiring a majority (or extraordinary majority) of the members "present and voting," because the elected members, although present, could not vote.
Another important implication pertains to the calling of special meetings at the instance of board members. Section 23-30-104
makes it the duty of the president of the State Board of Agriculture to call a special meeting of that board upon the written request of "any three members of the board. . . at such time and place as shall be designated in the written request therefor." Since elected members are members equally with appointed members, except as specifically provided to the contrary by statute, elected members as well as appointed members are entitled to join in such a special meeting request. There is no statutory provision for special meetings at the instance of board members as to any of the other affected governing boards; but any such provision that might be contained in the bylaws adopted by any such board could make no distinction between appointed and elected members for purposes of special meeting requests.
This memorandum does not exhaust the list of implications entailed by H.B. 1232. The foregoing discussion, however, should be sufficient to give guidance on other questions that might arise. The propositions in accordance with which all such questions must be resolved are: (1) the proposition that the term "advisory" in H.B. 1232 means "without the right to vote," and only that; and (2) the proposition that H.B. 1232 treats the elected members of the affected boards as "members" of those boards, without distinction from the appointed members except in those respects in which distinctions are explicitly drawn by the statute. It follows that except where and to the extent that a distinction is statutorily drawn, elected members of these governing boards are entitled to full and equal enjoyment of whatever rights and perquisites are enjoyed by appointed members of these boards, and are responsible, and potentially liable, for the acts and omissions of their respective boards to the same extent and under the same rules and limitations as those appointed members.
The effective date of H.B. 1232 was January 1, 1976, although the term of office prescribed for the elected members of the Board of Trustees for the University of Northern Colorado, the Board of Trustees of the Colorado School of Mines, the Trustees of the State Colleges in Colorado, and the Board of Directors of the Auraria Higher Education Center is fixed at one year to begin "July 1." It would be possible to construe this as meaning that the first elected members would not assume office until July 1, 1976, six months after the effective date of the Act. It seems more likely, however, that the General Assembly intended that elected members for all of the affected boards first take office on the effective date of the Act, although they might serve only for six months before replacement. This interpretation is more reasonable in light of the fact that the appropriation provided to support the separate advisory committees for the Trustees of the State Colleges in Colorado and the State Board for Community Colleges and Occupational Education is for the fiscal year beginning July 1, 1975. Since it is thus clear that the General Assembly intended the separate advisory committees to function between January 1, 1976, and July 1, 1976, it is reasonable to infer that the General Assembly intended the elected members of the governing boards themselves to function for that six month period as well, since there is no clear indication in the act to the contrary. Therefore, if the prescribed elected members have not yet been elected and installed with respect to any of the five affected governing boards, in order to achieve compliance with the law they ought to be so elected and installed immediately.
SUMMARY
Nonvoting student and faculty members of governing boards have all rights of other members of the board except as specifically provided to the contrary by statute.
Very truly yours,
 J.D. MacFARLANE Attorney General
EDUCATION, HIGHER
C.R.S. 1973, 23-30-101
C.R.S. 1973, 23-40-104
C.R.S. 1973, 23-41-102
C.R.S. 1973, 23-50-101
C.R.S. 1973, 23-70-102
HIGHER EDUCATION, DEPT. OF Trustees of State Colleges
Nonvoting student and faculty members of governing boards have all rights of other members of the board except as specifically provided to the contrary by statute.